IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| LOUIS DeROSIER,<br><br>Petitioner,<br><br>vs.<br><br>LEROY KIRKEGARD; ATTORNEY GENERAL OF THE STATE OF MONTANA,<br><br>Respondents. | Cause No. CV 13-215-M-DWM-JCL<br><br>FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE |

On October 18, 2013, Petitioner Louis DeRosier filed this action seeking a writ of habeas corpus under 28 U.S.C. § 2254. DeRosier is a state prisoner proceeding pro se.

On March 24, 2014, Respondents ("the State") filed documents from the state court record. On September 16, 2014, the State verified that the DVD recordings of DeRosier's arrest and booking at the county jail were available to the Montana Supreme Court. On October 2, 2014, the Court received those two DVD recordings from the clerk of the state district court.

## I. Background

On June 18, 2009, Sergeant Hildenstab of the Montana Highway Patrol was patrolling the area of "the Wye," a freeway truck stop area in Missoula County with a crossing state highway and view-obscuring hills and curves. The speed limit

1

in the area ranges from 55 miles per hour down to 45, then 35 miles per hour, and back up to 45 and then 55 miles per hour. Hildenstab clocked a vehicle driven by DeRosier at 70 or 75 miles per hour all the way through the zone. Trial Tr. (Doc. 8-5) at 196:11-198:5.

Hildenstab stopped the vehicle. When he approached, the driver seemed to be nervously avoiding eye contact. Hildenstab spoke briefly with DeRosier, then arrested him for speeding. As Hildenstab handcuffed DeRosier, he smelled alcohol. He smelled alcohol again when he placed DeRosier in the back seat of the patrol car and also noticed his eyes were bloodshot and glassy. After DeRosier was secured in the patrol car, Hildenstab asked him whether he had been drinking. DeRosier initially said he hadn't. Hildenstab responded that he could smell alcohol and asked whether DeRosier was sure he had not been drinking. DeRosier then said he "had one or two." Hildenstab also asked DeRosier to "blow his breath towards my nose." At first, DeRosier "was blowing toward the ground," but when he did it a second time, Hildenstab said, the odor of alcohol was "very strong." Trial Tr. at 198:17-200:22.

When the pair arrived at the county jail, Hildenstab asked DeRosier whether he had any physical conditions that might affect his performance on field sobriety tests. DeRosier told Hildenstab his knees were sore. (At trial, Hildenstab said he did not observe any indications of soreness; DeRosier said he had been a concrete

2

finisher for 15 to 18 years and spent a lot of time on his knees.) Trial Tr. at 216:10-25, 234:2-17. Hildenstab testified that DeRosier performed poorly on the horizontal gaze nystagmus test. *Id.* at 207:1-12. The DVD showed DeRosier also did not perform well on the standing leg raise. On the walk and turn, he steadied himself several times and failed entirely to execute the turn as directed. He could not complete his ABC's but said he always got confused "at the end," around P. Booking DVD at 15:41:32-15:46:14.

Hildenstab asked DeRosier to take a breathalyzer test. *See* Mont. Code Ann. § 61-8-402(1). When DeRosier asked what would happen if the breath test showed he was not intoxicated, Hildenstab said he thought DeRosier was impaired but would not charge him if he took the breath test and the result was under the legal limit. Booking DVD at 15:46:50-15:47:20. DeRosier discussed the matter with Hildenstab and thought about it for about 23 minutes.[1] He stated that he did not trust the machine, and Hildenstab said, "All I can tell you is that this instrument is extremely reliable." *Id.* at 16:09:05-16:09:18. Ultimately, DeRosier said, "Either way, I'm buried," and declined the breath test. *Id.* at 16:09:42-16:09:50.

Hildenstab then read DeRosier his *Miranda* rights. At DeRosier's request, he read them again. DeRosier agreed to talk to Hildenstab. DeRosier said he drank two Twisted Teas, the second about half an hour before Hildenstab pulled him

---

[1] The run time of the video is 22 minutes, but it was edited for presentation to the jury. The time stamp appears in the picture throughout.

over. He said he had not eaten since breakfast at 7:30 a.m. and did not feel either drunk or "buzzed," just angry that his girlfriend had called him to come in to Missoula from Arlee to pick her up. *Id.* at 16:12:24-16:17:25.

DeRosier was charged with driving under the influence ("DUI"), fourth or subsequent offense, a felony violation of Mont. Code Ann. § 61-8-401(1)(a) ("Count 1"); driving with a suspended or revoked license, a violation of Mont. Code Ann. § 61-5-212(1)(a)(i) ("Count 2"); and failing to carry proof of liability insurance, a violation of Mont. Code Ann. § 61-6-302(2) ("Count 3"). At the time of his arrest, DeRosier was on probation for his eighth DUI conviction.

The State and counsel for DeRosier reached a plea agreement. The trial court, however, rejected the agreement as too lenient. Sentencing Tr. (Doc. 8-2) at 10:4-11:7. DeRosier withdrew his guilty plea, and a new trial date was set. Before trial commenced, DeRosier pled guilty to Counts 2 and 3. Trial Tr. (Doc. 8-5) at 22:7-23:21.

At trial, Hildenstab testified without objection to all of DeRosier's statements. In its case-in-chief, the State presented the DVD recording of DeRosier's arrest and of his sobriety tests in booking at the county jail.[2] DeRosier testified in his defense. On direct examination, defense counsel asked DeRosier how many Twisted Teas he had consumed before he got in the car. DeRosier said,

---

[2] The recording made at the scene of the arrest was played on mute. Trial Tr. at 25:17-26:3.

"Probably about four." Trial Tr. (Doc. 8-5) at 231:7-8.

The jury found DeRosier guilty of driving under the influence of alcohol. *Id.* at 265:22-266:4.

Because the instant offense was DeRosier's ninth DUI – that is, his sixth felony DUI – he was designated a persistent felony offender. The maximum statutory penalty for his offense was 100 years in prison. Mont. Code Ann. § 46-18-502(1), (2). Because DeRosier had been designated a persistent felony offender when he incurred his eighth DUI conviction, the designation in this matter was his second or subsequent designation in five years. As a result, he faced a mandatory minimum prison sentence of ten years. Mont. Code Ann. § 46-18-502(2). On March 18, 2010, DeRosier was sentenced to serve 40 years in prison for felony DUI, with 30 of those years suspended. On Counts 2 and 3, DeRosier was sentenced to serve six months, both terms to run concurrently with each other and with Count 1. Sentencing Tr. (Doc. 8-6) at 275:7-9, 277:10-17.

DeRosier appealed, challenging the admission of his statements and trial counsel's failure to move to suppress them. The Montana Supreme Court declined to find the admission of his statements was plain error. It also declined to rule on the ineffective assistance claim. Order at 5 ¶¶ 15-16, *State v. DeRosier*, No. DA 10-0239 (Mont. Dec. 21, 2010) (unpublished).

On August 9, 2011, represented by new counsel, DeRosier filed a petition

for postconviction relief in the trial court. He alleged that trial counsel was ineffective for failing to oppose admission of DeRosier's statements made before and after he received the *Miranda* warning. Following an evidentiary hearing, the trial court denied relief. DeRosier appealed. The Montana Supreme Court affirmed. Order at 4 ¶ 7, *DeRosier v. State*, No. DA 12-0390 (Mont. May 21, 2013) (unpublished).

DeRosier timely filed his federal petition on October 15, 2013. 28 U.S.C. § 2244(d)(1)(A); *Gonzalez v. Thaler*, __ U.S. __, 132 S. Ct. 641, 653-54 (2012).

## II. Claims and Analysis

With respect to the statements he made in custody, DeRosier alleges counsel performed ineffectively in various ways. His allegations constitute one claim that counsel unreasonably failed to move to suppress DeRosier's statements to Hildenstab, and there is a reasonable probability the outcome of his trial would have been different if his statements had been excluded. Pet. (Doc. 1) at 5-6.

DeRosier also contends that counsel should have objected to the trial court's rejection of the plea agreement, *id.* at 6, and to the prosecutor's closing argument attacking his credibility, *id.* at 19.

Claims of ineffective assistance of counsel are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). DeRosier must allege facts sufficient to support an inference (1) that counsel's performance fell below an objective standard of

reasonableness, *id.* at 687-88, and (2) that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. "[T]here is no reason . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

**A. DeRosier's Statements**

**1. 28 U.S.C. § 2254(d)**

The Montana Supreme Court decided DeRosier's claims about his in-custody statements on the merits. Where a state court has denied relief on the merits, a state prisoner may obtain federal habeas relief only if the state court's denial of his claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if the state court's denial was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2).

Under § 2254(d)(1), a state court decision is "contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [its] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from our precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court's decision is an "unreasonable

application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at 407. "[A] habeas court must determine what arguments or theories supported . . . the state court's decision; and then it must ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court of the United States. *Harrington v. Richter*, 562 U.S. 86, __, 131 S. Ct. 770, 786 (2011). "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011).

## 2. DeRosier's Statements and Testimony

According to Hildenstab's testimony, DeRosier made two statements in the back of the patrol car. First, he said he had not been drinking. Second, he changed his statement and said he "had one or two," that is, he said he had been drinking, but not much. When DeRosier was arrested, handcuffed, and placed in the back of the patrol car, he was unquestionably in custody. Because "the prosecution may not use statements,[3] whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural

---

[3] The trial court's distinction between a "confession" and a "statement," Order (Doc. 8-22) at 5, is not relevant to *Miranda*. The Constitution protects the accused against police conduct, *viz.*, custodial interrogation. It does not vary depending on the nature of the responses elicited.

8

safeguards effective to secure the privilege against self-incrimination," *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), the statements made by DeRosier in response to Hildenstab's questions were subject to exclusion.

According to Hildenstab's testimony and the booking video, Hildenstab did not initiate any questioning of DeRosier at the jail until after he had read the *Miranda* warning. At DeRosier's request, he read it twice. DeRosier then said he drank two Twisted Teas, the second about half an hour before Hildenstab pulled him over. He also said he had not eaten since 7:30 a.m. and did not feel either drunk or "buzzed." The Montana courts assumed the cautioned statement was tainted by the uncautioned one. *Compare Missouri v. Seibert*, 542 U.S. 600 (2004), *with Oregon v. Elstad*, 470 U.S. 298 (1985); Order at 3 ¶ 5, *DeRosier*, No. DA 12-0390. For present purposes, this Court will follow that characterization and assume the post-*Miranda* statements were also subject to exclusion.

DeRosier also argues that he would not have testified had counsel moved to suppress his statements. Pet. at 18; Order at 3 ¶ 5, *DeRosier*, No. DA 12-0390. The Court assumes that that is true. Therefore, had counsel moved to suppress DeRosier's pre- and post-*Miranda* statements, the jury also would not have heard him testify that he had four Twisted Teas rather than two.

### 3. Prejudice

*Strickland* prejudice must be assessed by focusing on the effect the

9

objectionable evidence could realistically have on a reasonable juror applying the presumption of innocence and demanding the State prove the charge beyond reasonable doubt. The questions are whether a reasonable juror not exposed to the objectionable evidence could have failed to be persuaded of the defendant's guilt beyond reasonable doubt and whether the objectionable evidence could have persuaded that juror to relinquish reasonable doubt and convict. *Cf. United States v. Lane*, 474 U.S. 438, 450 n.13 (1986) (cited in *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)). The Montana Supreme Court's application of this test is entitled to deference under 28 U.S.C. § 2254(d).[4]

The Montana Supreme Court's decision was not unreasonable. DeRosier sped at 70 miles per hour through a controlled area with limited visibility and a high rate of car and trucker traffic. Sergeant Hildenstab testified that inside the car, where the wind was not blowing, the odor of alcohol on DeRosier's breath was "very strong." He also said DeRosier's eyes were bloodshot and glassy. DeRosier did not perform well on sobriety tests. Two of those were witnessed by the jury on DVD, and Hildenstab testified that DeRosier performed poorly on the horizontal

---

[4] The state courts essentially assumed counsel's performance was deficient. While there could be a reasonable strategic basis, as counsel said at the postconviction hearing, for not moving to suppress an uncautioned in-custody statement, counsel also said it is common for his clients to tell him one thing before trial and then, on the stand at trial, say something entirely different. Postconviction Tr. (Doc. 8-23) at 25:3-27:13, 46:6-25. In those circumstances, the better practice is probably to inform the client of the possibility of filing a motion to suppress and the remaining potential for the State to use voluntary uncautioned statements to impeach the defendant if he testifies.

gaze nystagmus test. All these facts point to a finding that DeRosier was driving under the influence of alcohol.[5]

Contrary to his theory that admission of his statements prejudiced him under *Strickland*, DeRosier's pretrial statements were the only evidence that tended to contradict the State's case. His statements – as opposed to his testimony – did not materially contribute to a finding that he was under the influence, because he denied being under the influence.

DeRosier's testimony, by contrast, materially increased the quantum of evidence against him. His testimony not only doubled the number of drinks he claimed to have consumed, it also undermined the credibility of his prior statements that he had had two drinks, that he was not drunk or "buzzed," and that he did not trust the breathalyzer machine.

Yet even if DeRosier's testimony "sealed the deal," the prejudice he suffered was not sufficient to warrant relief. He need only show a "reasonable probability" of a different outcome, and that is less than a preponderance of the evidence. *Strickland*, 466 U.S. at 694. But there is no reasonable probability a reasonable juror would have retained reasonable doubt. Without DeRosier's statements and testimony, all the evidence pointed to a verdict against DeRosier. It was possible a

---

[5] DeRosier refused to take a breath test despite the possibility that it would exonerate him, but arguably this particular item of evidence was negated by his statement that he did not trust the machine.

reasonable juror might not have been persuaded, but not so likely as to reach even the relatively low *Strickland* prejudice standard. At the least, the Montana Supreme Court's conclusion that DeRosier did not show sufficient prejudice was not unreasonable.

### 4. Conclusion

The Montana Supreme Court's decision was reasonable. Relief is precluded by 28 U.S.C. § 2254(d). This claim should be denied.

### B. Trial Court's Rejection of the Plea Agreement

This claim was not properly presented in the state courts. Regardless, it lacks merit. 28 U.S.C. § 2254(b)(2). There is no legal basis on which a Montana state court may be compelled to accept a plea agreement. Either the trial court would have discretion to reject the entire plea agreement, *see* Mont. Code Ann. § 46-12-211(1)(b), (4), or it would have discretion to reject the recommended sentence, *id.* § -211(1)(c), (2). In either case, counsel had no means to ensure the trial court would give DeRosier the sentence he bargained for with the State.

Nor has DeRosier suggested any argument that would, even to only a reasonable probability, persuade a reasonable jurist to impose a sentence of ten years with five suspended for a ninth DUI conviction and sixth felony DUI conviction.

The facts alleged by DeRosier do not support an inference of either deficient

performance or prejudice. This claim should be denied for lack of merit.

### C. Prosecutor's Closing Argument

Finally, DeRosier alleges that counsel should have objected to the prosecutor's improper comments in closing argument about DeRosier's credibility. Pet. at 19.[6] The prosecutor's argument simply encouraged the jury to infer, based on the evidence, that DeRosier was not a credible witness. The argument was wholly unobjectionable. The facts alleged by DeRosier do not support an inference of either deficient performance or prejudice. This claim should be denied for lack of merit.

## III. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484

---

[6] DeRosier presented this claim on direct and postconviction appeal. The Montana Supreme Court did not address it on the merits. There is no need to consider its procedural posture because it plainly lacks merit.

13

(2000)). Where a claim is dismissed on procedural grounds, the court must also decide whether "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Gonzalez*, 132 S. Ct. at 648 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

DeRosier did not fairly present in the state courts his claim that counsel should have talked the trial judge into accepting the proposed plea agreement, but the claim does not meet even the relatively low threshold of 28 U.S.C. § 2253(c)(2). Neither defense counsel nor the State have any legal authority to compel a trial court to accept a plea agreement, and DeRosier himself makes no argument in favor of five years in jail for a sixth felony DUI conviction. DeRosier's claim that counsel should have objected to the prosecution's closing argument takes aim at a wholly unobjectionable closing argument. These claims do not meet the relatively low standard of 28 U.S.C. § 2253(c)(2).

As to DeRosier's claim that counsel should have moved to suppress his in-custody statements, even if reasonable jurists could reach a different conclusion on a *de novo* application of the *Strickland* standard, the Montana Supreme Court's conclusion was not unreasonable. DeRosier meets the low threshold of a substantial showing that he was deprived of a constitutional right, 28 U.S.C. § 2253(c)(2), but there is no room for doubt about the procedural ruling, *Gonzalez*, 132 S. Ct. at 648. A certificate of appealability should be denied.

Based on the foregoing, the Court enters the following:

## RECOMMENDATION

1. DeRosier's petition (Doc. 1) should be DENIED for lack of merit.

2. The Clerk of Court should be directed to enter, by separate document, a judgment in favor of Respondents and against the Petitioner.

3. A certificate of appealability should be DENIED.

## NOTICE OF RIGHT TO OBJECT
## TO FINDINGS & RECOMMENDATION
## AND CONSEQUENCES OF FAILURE TO OBJECT

DeRosier may object to this Findings and Recommendation within 14 days.[7] 28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

<u>DeRosier must immediately notify the Court of any change in his mailing address by filing a "Notice of Change of Address."</u> Failure to do so may result in dismissal of his case without notice to him.

DATED this 22nd day of October, 2014.

       */s/ Jeremiah C. Lynch*
       Jeremiah C. Lynch
       United States Magistrate Judge

---

[7] As this deadline allows a party to act within 14 days after the Findings and Recommendation is "served," Fed. R. Civ. P. 6(d) applies, and three days are added after the time would otherwise expire.